Bell, J.,
 

 dissenting. The General Assembly, under the police power, has passed an elaborate code regulating the practice of dentistry in this state. Sections . 1314 to 1333-1, both inclusive, General Code.
 

 To provide for enforcement of the act, an administrative board called the State Dental Board was created. By the act, the board is granted wide powers, among which is the power to conduct hearings and revoke the license of any practicing dentist.
 

 We are concerned here with the power to revoke the license of appellant.
 

 In my consideration of the case, the first inquiry is what is the nature of the proceeding where charges are preferred against a practicing dentist. Is it a civil action, gwasi-criminal, or a criminal prosecution?
 

 The second inquiry is what
 
 quantum
 
 of proof is necessary to convict — a preponderance of the evidence, clear and convincing evidence, or evidence which convinces beyond a reasonable doubt.
 

 
 *71
 
 So far. as I have been able to. ascertain this court has never determined either the nature of the proceeding or the
 
 quantum
 
 of proof necessary to warrant a judgment of guilty.
 

 The proceeding has many of the. attributes of a criminal prosecution and substantially none of a civil action. .
 

 In my judgment, .where charges are preferred under Section 1325, General Code, the proceeding is
 
 quasi-
 
 criminal in nature and, to sustain a conviction, clear and convincing evidence is required.
 

 Section 1325, General Code, enumerates certain acts for which a license may be revoked, and the charges were filed alleging a violation of one of the provisions of this section.
 

 The appellant was charged in the specifications with the violation of the statute in eight separate and distinct particulars.
 

 He was found guilty of charge A-3 only by the Court of Common Pleas of Cuyahoga county.
 

 The purport of charge A-3 is the violation of the following clause of Section 1325, General Code:
 

 “*
 
 * * or employs or makes use of advertising solicitors or publicity agents.”
 

 Charge A-3 reads as follows:
 

 “3. Said Dr. Irwin Unger has made use of advertising solicitors and/or publicity agents, to wit: Henry Urden and/or Edward Urden, doing business as the State Dental Laboratory, Edward Urden and/or Henry Urden and State Dental Laboratory, between the dates of January 15, 1941, and June 19, 1941.”
 

 The appellant filed an answer admitting that he was a dentist duly licensed to practice dentistry, denied that he had been guilty of any acts or practices violating the dental code of Ohio and specifically denied the charges contained in the specifications.
 

 
 *72
 
 Earnest H. Sellers, an inspector employed by the State Dental Board, preferred the charges against appellant.
 

 On July 29, 1941, the matter came on for hearing at Cleveland, Ohio. All of the board members were present, including Dr. Wm. J. Sterling, to whom attention presently will be directed. The board, the complainant .and the appellant were all represented by counsel.
 

 For the sake of brevity the State Dental Laboratory will be designated as the laboratory and Dr. Unger as appellant.
 

 A brief consideration of the evidence is instructive.
 

 Elmer Clupper testified that Dr. Sterling and Earnest H. Sellers met him in another dentist’s office in the Old Arcade Building in Cleveland,' on May 1, 1941, and hired him to go to the laboratory and represent that he desired to purchase a denture. The witness went there and talked with some person in the office. He was permitted to relate what the clerk said to him and what he said to the clerk. After that conversation he was sent to appellant’s office and appellant took an impression for a denture for which Clupper paid a small fee. He was given the impression which he took back and delivered to Sellers and was paid three dollars for his services by Dr. Sterling.
 

 ■ Gertrude Quarles, accompanied by her husband, Samuel Quarles, on May 1, 1941, went' to the office of the laboratory and met a clerk with whom she had a conversation about a new denture and she also was sent to the office of appellant who took an impression for her denture for which she paid three dollars. She was given the impression and returned it to the laboratory. .As she and her husband left the building they were accosted by Dr. Sterling and Sellers. Sellers showed a badge, asked the Quarleses where they had
 
 *73
 
 been and discussed with them what had been said at the laboratory and at appellant’s office.
 

 Frances Sanders was called and testified that on April 18, 1941, she went to the laboratory to purchase a denture. She testified as to her conversation with the employee of the laboratory; that she was sent to appellant’s office where an impression was taken of both the upper and lower jaws, for which she paid appellant five dollars; and that she paid the laboratory five dollars on account of the purchase price of the denture. On the same day, complainant visited this witness at her home in Lorain, Ohio, and gave her the ten dollars and at least intimated that she should not return to the laboratory; and she never did.return. All of the conversations at the laboratory were held in the absence of the appellant.
 

 H. B. Pugsley, office manager of the Cleveland Press, and Kenneth J. Sharp, credit manager of the Cleveland News, newspapers published in Cleveland, Ohio, were called.
 

 The testimony of Pugsley discloses that the laboratory had advertising contracts from October 1939, to the time of the hearing, and- that the appellant had nothing whatsoever to do with those contracts.
 

 The testimony of Sharp disclosed that the laboratory had an advertising contract with the Cleveland News for one year from November 1, 1940, but failed to disclose that appellant had anything to do with that contract.
 

 There was also offered and received in evidence a certified copy of a judgment of the dental board wherein appellant was suspended from practice for three months in. the year 1940 for making impressions in connection with another laboratory.
 

 This, in substance, is the evidence offered in support of the charges.
 

 The appellant offered one witness, H. S. Malm, the assistant manager of the Old Arcade building, who
 
 *74
 
 testified that appellant leased his own space and paid his own rent as well as the expense of remodeling the rented space.
 

 Appellant did not testify in his own defense.
 

 The dental board found appellant guilty and inflicted the most severe penalty provided by law, revocation of his license.
 

 The appellant appealed to the Court of Common Pleas and the cause was submitted by agreement upon the transcript of the evidence taken before the board. That court found appellant guilty of specification A-3 heretofore quoted and inflicted the same penalty as the board.
 

 The Court of Common Pleas, in effect, treated the appeal as a proceeding in error, followed the rulings of the board upon questions of evidence as well as upon the question of penalty.
 

 By the language of Section 1327, General Code, the appeal provided for is a trial
 
 de novo
 
 wherein the court should exercise its independent judgment both as to the admissibility of evidence and penalty in the event of conviction.
 

 It is clear that the court exercised no independent judgment in this case.
 

 An appeal on questions of law was perfected in the Court of Appeals and the judgment of the Court of Common Pleas was affirmed.
 

 We are without benefit of the reasoning of the two aforementioned courts as neither court wrote any opinion.
 

 This case should be reversed for three reasons.
 

 First.
 
 Appellant did not have such a fair and impartial hearing as is contemplated by law.
 

 Dr. Sterling and Sellers were actively engaged in securing the evidence and were financially interested in the outcome of the case, they having paid money to witnesses (Elmer Clupper and Frances Sanders) who
 
 *75
 
 testified in behalf of complainant. Dr. Sterling then proceeded to sit in the case as one of the judges until Elmer Clupper, during his testimony, pointed out Dr. Sterling as the man who had paid him money. After Dr. Sterling had been pointed out by the witness this colloquy took place between Dr.. Harris, president of the board, and counsel for appellant.
 

 “ (Thereupon the officers and members of the board conferred.)
 

 “President Harris: At this time, Mr. Corrigan, I am authorized by Dr. Sterling to state, if you desire, he will withdraw from any consideration of this case, by reason of the testimony of this witness.
 

 “Mr. Corrigan: I ask that all the testimony of this witness be stricken, because it is testimony or evidence obtained in a plot to entrap Dr. Unger. * * *
 

 “Mr. Corrigan: I don’t think it is up to me as counsel here, to say anything about who should sit on this case. I don’t think I have any authority on it.
 

 “Mr. Rees: You may step down, Mr. Clupper.
 

 “(Witness excused.)
 

 “Mr. Corrigan: I presume, when I come in, we are tried before an impartial board.
 

 “President Harris: Let the record show at this time Dr. Sterling is withdrawing from the consideration of this case.
 

 “(Thereupon Dr. Sterling withdrew.)
 

 “Mr. Corrigan: Does the record show the members of the Board that are present?
 

 “President Harris: Yes, the board consists of five members, and they are all here.”
 

 Dr. Sterling knew the part he had played before the hearing started and certainly 'he should not have waited until pointed out by the witness to offer to retire.
 

 That Dr. Sterling did not retire is shown by the record. Later he was again pointed out in the hearing room by Samuel Quarles during his testimony.
 

 
 *76
 
 The last evidence introduced by complainant at the hearing was a certified copy of a judgment entered in 1940 by the State Dental Board suspending appellant’s license to practice for three months under facts similar to those here involved. Objection was made by counsel for appellant.- The board admitted this document upon the unusual theory that tbe board would use the instrument only in fixing punishment in the event appellant was found guilty.
 

 In admitting this evidence President Harris made this statement :
 

 “Mr. Rees: At this time I would like to offer in evidence complainant’s Exhibit 17, which is a certified copy of the decision of the Ohio State Dental Board in the matter of the charges against Dr. Irwin Unger and the decision of the board rendered on December 24, 1940.
 

 “Mr. Corrigan: I object to it.
 

 “President Harris: Well, of course, the board will take notice, of its own orders and this certified copy may be admitted solely for the purpose of consideration of punisment in the event that the board does find Dr. Unger-guilty of any of the alleged charges. It will not be considered on the merits of the case, of course.”
 

 This board was sitting as both court and jury. To admit any document in evidence to be used in imposing sentence before determination of guilt was prejudicial to appellant.
 

 To my mind it is a fair inference that this document could serve no purpose other than to prejudice the appellant before the board and the Court of Common Pleas in the event of an appeal.
 

 This was the kind of trial which was condemned by the United States Supreme Court in the case of
 
 Tumey
 
 v.
 
 State,
 
 273 U. S., 510, 71 L. Ed., 749, 47 S. Ct., 437.
 

 Second.
 
 Error in the admission of evidence.
 

 The case was tried upon the theory of conspiracy.
 

 
 *77
 
 Whether there was a conspiracy is important in determining whether competent evidence only was received and considered, both by the board and the Court of Common Pleas.
 

 Under Section 1329, General Code, then in force, a dental laboratory could not take impressions of teeth or jaws, therefore it was necessary in the conduct of its business, when a customer desired a denture, to first send such customer to a licensed dentist to secure an impresstion. Any dentist had the lawful right to take the necessary impressions and charge a fee.
 

 At the time here in question,
 
 vis.,
 
 April 1, to June 19, 1941, a dentist had the legal right also to advertise within the limitations contained in Section 1329, General Code.
 

 The record discloses all the conversations between the witnesses Clupper, Quarles and Sanders and employees of the laboratory were admitted over the appellant’s objection upon the theory of conspiracy, upon the statement that the evidence would be connected with appellant. No testimony in any manner connecting these conversations with appellant was offered. However, it all was permitted to remain in the record.
 

 The Court of Common Pleas considered all of this evidence in arriving at its conclusion.
 

 When construed most strongly against appellant the evidence discloses that three persons were sent by the laboratory to appellant’s office for impressions which appellant made and for which a fee was charged.
 

 There was not a syllable of direct testimony tending to prove the charge that there existed some arrangement between some person by the name of Urden or the laboratory and appellant. There was no evidence of fee splitting and there was proof that appellant had nothing to do with the laboratory’s advertisement.
 

 
 *78
 
 The State Rental Board apparently proceeded upon the theory-that it1 was a violation of Section 1325, General Code, for a licensed dentist to take impressions of the teeth and jaws of persons sent him by a dental laboratory. • This conclusion is supported by the fact that Mr. Sellers testified' that on or about April 18, 1941, he went to appellant’s office, told appellant he heard that appellant was making impressions for the laboratory and proceeded to question appellant in respect thereto.
 

 I maintain that- under the law then in force, appellant had the legal right to make impressions for any or all persons sent by the laboratory and in so doing he was not violating the provisions of Section 1325, General Code.
 

 To convict the appellant a conclusive inference of guilt must be drawn from circumstantial evidence.
 

 The accused should not be found guilty upon circumstantial evidence unless the facts and circumstances proven are wholly consistent with guilt and completely inconsistent with innocence.
 

 The only fair inference from this evidence in my judgment is that appellant did nothing which he did not have a legal right to do.
 

 Third.
 
 The case was tried upon the theory of conspiracy.
 

 It was claimed that a conspiracy existed between appellant and Urden and the laboratory. The evidence offered was admitted upon that basis. If any doubt exists as to that being the theory of the prosecution it is forever set at rest by the statement of complainant’s counsel as well as the briefs and arguments in this court.
 

 It should be pointed out that at all times from-January 15, 1941, to June 19, 1941, the laboratory had the legal right to transact business directly with the public and to advertise its business in the manner dis
 
 *79
 
 closed by this record. Amended Section 1329, General Code, did not become effective until August 21, 1941. No one reading this record can find any evidence of conspiracy.
 

 A
 
 conspiracy is a combination of two or more persons by some concert of action to do an unlawful act or a lawful act by criminal or unlawful means.
 

 The acts of the laboratory being lawful it could not be a party to the conspiracy claimed. Appellant could not enter into a conspiracy with himself and the claim, of conspiracy vanishes into thin air.
 

 A great deal is made of the fact that appellant did: not take the witness stand.
 

 Appellant’s failure to testify cannot justify a conviction where, as here, there is an entire failure of proof of any violation of law.
 

 Hart, J., concurs in the foregoing dissenting opinion.